**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 7** |
| **Louise Bentivegna,** | : | |
| **Debtor.** | : | **Case No.: 16-12925 (JKF)** |
| _____ | | |
| **Christine C. Shubert, Chapter 7 Trustee**<br>**for the Estate of Louise Bentivegna,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **Howard R. Foulkrod,** | : | |
| **Defendant.** | : | **Adversary No.: 17-0353** |
| _____ | | |

## MEMORANDUM OPINION SUR
## ORDER DENYING PLAINTIFF'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT

### I.      Background

The Plaintiff filed this adversary proceeding against the Defendant seeking to

avoid and recover a transfer of property of the Debtor as either a preferential or

fraudulent transfer pursuant to §§ 544, 547, and 548 of the Bankruptcy Code. The

Defendant filed an Answer to the Complaint. The Plaintiff now moves for summary

judgment as to Count II of the Complaint, the claim for avoidance of a transfer as

constructive fraud (11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B)). The Defendant has filed a

response opposing the motion. For the reasons which follow an Order denying the

Motion will be entered.[1]

II.    Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of

Civil Procedure ("Fed.R.Civ.P.").[2] Pursuant to Rule 56, summary judgment should be

granted when the "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(a). For purposes of Rule 56, a fact is material if it might affect the

outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of demonstrating that no genuine issue of fact

exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91

L.Ed.2d 265 (1986). The court's role in deciding a motion for summary judgment is not

to weigh evidence, but rather to determine whether the evidence presented points to a

disagreement that must be decided at trial, or whether the undisputed facts are so one

sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. at 249–252, 106 S.Ct. at 2510–12. In making this determination, the court

must consider all of the evidence presented, drawing all reasonable inferences

---

[1] Because this matter involves the avoidance and recovery of a fraudulent transfer, it is within
this court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(H).
[2] Made applicable to adversary proceedings by B.R. 7056.

therefrom in the light most favorable to the nonmoving party, and against the movant.

See *Halsey v. Pfeiffer,* 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may

not simply rest on its pleadings, but must designate specific factual averments through

the use of affidavits or other permissible evidentiary material that demonstrate a triable

factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Such

evidence must be sufficient to support a jury's factual determination in favor of the

nonmoving party. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511. Evidence that

merely raises some metaphysical doubt regarding the validity of a material fact is

insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538

(1986). If the nonmoving party fails to adduce sufficient evidence in connection with an

essential element of the case for which it bears the burden of proof at trial, the moving

party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III.    Applicable Law

The constructive fraud provisions of the Bankruptcy Code and applicable non-

bankruptcy law[3] provide, respectively and in pertinent part:

> **(a)(1)** The trustee may avoid any transfer (including any transfer to or for
> the benefit of an insider under an employment contract) of an interest of
> the debtor in property, or any obligation (including any obligation to or for
> the benefit of an insider under an employment contract) incurred by the

---

[3] Section 544(b)(1) of the Bankruptcy Code makes the Pennsylvania voidable transfer statute
available to a trustee.

debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

…

**(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

**(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

**(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

**(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

**(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C.A. § 548(a)(1)(B),

**(a) General rule.—**A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

…

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due;

and

**(a) General rule.--**A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that

time or the debtor became insolvent as a result of the transfer or
obligation.

12 P.S. §§ 5104(a)(2), 5105(a).[4] The federal and state statutes share the same

elements for a cause of action for the avoidance and recovery of a constructively

fraudulent transfer, except for minor differences which are not at issue here. *See In re*

*Xyan.com, Inc.*, 299 B.R. 357, 363 (Bankr.E.D.Pa. 2003) (noting the substantive identity

of elements as between the causes of action).

IV.    Findings – Points in Agreement

On June 18, 2015 the Debtor and the Defendant entered into the Timber Sale

Agreement. Compl. ¶ 10, Answer ¶ 10. Pursuant to this agreement the Defendant was

permitted to cut timber on Debtor's real estate for a limited time and for consideration of

$10,000. Compl. Ex. A. However, the actual consideration which the Defendant paid the

Debtor for that right was $55,000. Pl.'s Mem. at 2, Def.'s Mem. at 9;

On July 16, 2015, the Defendant sold the same timber rights which he acquired

from the Debtor to a third party, Patterson Lumber Co., Inc. (PLC). Compl. ¶ 12, Answer

¶ 12. The agreement with PLC provided that PLC shall pay consideration of $105,000

for the timber rights but itemized some of the consideration in the form of non-cash

property. Compl. Ex. B.

V.    Findings – Points in Dispute

The parties disagree on the value of the timber rights which the Debtor

transferred to the Defendant and which the Defendant subsequently transferred to PLC.

---

[4] The statute was amended in 2018 but the changes were stylistic only: the word "fraudulent" in the first sentence
was changed to "voidable."

*Compare* Pl.'s Mem. at 2 with Def.'s Mem. at 3-4. The parties also disagree as to

whether the Debtor was insolvent, under-capitalized, or unable to pay her debts when

she made the transfer. *Compare* Compl. and Answer ¶¶ 34-36. Thus, the record reveals

that the points of disagreement are limited to the following: first, whether the Debtor

received reasonably equivalent value[5] in exchange for the property which she

transferred to the Defendant; and second, whether the Debtor was in a financially

straitened state at the time of the transfer;

### A. Reasonably Equivalent Value

The Third Circuit has explained that the determination of whether reasonably

equivalent value was exchanged for a transfer is a factual one. See *Mellon Bank, N.A.*

*v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d

139, 153 (3d Cir. 1996). The Third Circuit further explained that a court making that

finding must examine the totality of the circumstances. *Id.*

The Trustee's contention that the Debtor did *not* receive reasonably equivalent

value in exchange for her sale of the timber rights is based on what the Defendant did

with those rights less than one month later: he sold them for a sum almost twice

($105,000) what he ultimately paid the Debtor ($55,000). Pl.'s Mem. at 2. For the

Plaintiff, that sale price establishes what the value of the timber rights were. Id. Because

the Defendant paid the Debtor only $55,000 for those rights, the value which she

---

[5] The parties agree that value was exchanged, which is the threshold finding for a determination of reasonably equivalent value for purposes of fraudulent transfer law. The remaining question is whether that value was reasonably equivalent to what was exchanged for it. *See Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212-214 (3d Cir. 2006) (explaining that the inquiry involves two steps: first, a determination of whether any value was received and, if so, then whether the value received was "reasonably equivalent" to what was transferred)

received in exchange for the timber rights cannot be considered as reasonably equivalent. *Id.*

Defendant disputes the valuation of the timber rights at $105,000 on two separate grounds. First, he attempts to establish that the $55,000 which he paid the Debtor is the value of the timber rights by comparing that transaction to the Trustee's sale of the Debtor's ½ interest in the 113 acres in Sabinsville, Pennsylvania. See Trustee's Motion to Sell, Order approving Sale, and Report of Sale. Case No. 16-12925, Docket ## 269, 279, and 282. That sale yielded a value of $1,116 per acre. A sale of just the timber right for 4 years shows that $55,000 has to be considered as fair market value." Def's Mem. at 5. Second, he contends that of the total consideration of $105,000, the non-cash component of the agreement, the 32.4-acre parcel valued at $44,812, did not go to him. *Id.* at 3-4. That parcel, he insists, was transferred to an entity referred to as the Foulkrod Family Trust. *Id.* As proof of this contention, he has attached to his response documents which purport to show that the parcel was transferred to that entity, and not to him. *Id.* Ex. 1.

Assuming that both of these premises are true, the court does not see how or where they shed light on the question of what the timber rights were worth. Whatever price per acre that the land in Sabinsville sold for, it is not probative of what the value of the timber on nearby land might have been. In the same way, the fact that some of the consideration went to someone other than the Defendant does not mean that the value of the timber rights is not equal to the purchase price. Both arguments are simply beside the point.

What does call into question the Trustee's valuation of the timber rights is the structure of the consideration. In pertinent part, the agreement provides that PLC would pay the Defendant for the timber rights as follows:

Buyer agrees to pay Seller the total sum of <u>$105,000.00  full consideration</u>.

| Payment shall be made as follows: | | Timber payment |
|---|---|---|
| $ 105,000.00 | For marked timber | $25,000.00 down |
| - $  42,140.00 | PLC sale of 32.4 acres land | $35,000 start of logging |
| <u>- $    2,672.00</u> | Survey of 32.4 acres | $60,188 |
| $  60,188.00 | Net for timber | |

Mot. Ex. B. So, in addition to cash payments totaling $60,188, PLC would also tender noncash consideration in the form of real estate: a 32.4-acre parcel. The parties' agreement ascribes a dollar value to that parcel of $44,812. Adding that figure to the amount of the cash consideration of $60,188 yields total payment of $105,000 which is what the Trustee values the timber rights at.

The Defendant disputes that valuation. Although he appears to have signed the agreement which values the 32.4 acres at $44,812, he now alleges that it is worth $9,800. See Answer ¶ 12f. He explains that the parcel has no value for timber cutting but is useful for hunting. *Id.* ¶ 12h; Def.'s Mem. at 3-4. The parties have offered conflicting evidence as to what the timber rights were worth. A trial, then, will be necessary to arrive at a value of the timbers rights in order to determine if they were sold for reasonably equivalent value.

*Whether the Debtor was Insolvent*

The Plaintiff maintains that at the time of the transfer (June 18, 2015) the Debtor was either insolvent, insufficiently capitalized, or unable to pay her debts. Comp. ¶¶ 34-

8

36; Pl.'s Mem. at 10-12. The Defendant disputes the claim of insolvency. Answer ¶¶ 34-36; Def.'s Mem. at 5-7, 11;

The Bankruptcy Code specifically defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A). The Third Circuit has stated that this determination is made by undertaking a "balance sheet test," which involves assessing a debtor's assets and liabilities "at a fair valuation." *Mellon Bank, N.A. v. Metro Commc'n, Inc.,* 945 F.2d 635, 648 (3d Cir.1991). That condition is determined "at the time the debtor transferred value, not at some later or earlier time." *R.M.L., Inc., supra,* 92 F.3d at 154.

The evidentiary basis for Plaintiff's claim of insolvency consists of the Debtor's Voluntary Petition, her Schedules A/B, C, and E/F and the Claims Register. Mot. Ex. D - H. Yet where, as here, the Debtor's schedules are probative as to solvency only at the time of the Debtor's bankruptcy filing (April 16, 2016), they are not probative on the Debtor's financial state at the time of the allegedly fraudulent transfer: ten months earlier (June 18, 2015). *See e.g., In re Dressel Assocs., Inc.*, 536 B.R. 158, 165 (W.D.Pa. 2015) (refusing to ascribe probative value to the schedules on the question of the debtor's financial solvency at time of alleged fraudulent transfer which occurred nearly one year prior to bankruptcy); *see also In re Stanley*, 384 B.R. 788, 808 (Bankr.S.D.Ohio 2008) (declining to apply retrojection analysis to debtor's solvency given nearly two-year gap between date of alleged fraudulent transfer and petition date); *Gold v. Laines (In re Laines),* 352 B.R. 397, 402 n. 6 (Bankr.E.D.Va.2005)

9

("Insolvency determined as of one date may form the basis for the inference that insolvency existed on another date if the dates are relatively close in time and if no significant transactions occurred between the two dates"); *Dahar, Trustee v. Jackson (In re Jackson),* 318 B.R. 5, 16–17 (Bankr.D.N.H. 2004) (rejecting 29-month gap); *Nicholls v. Jones (In re Jones),* 2004 WL 826031 at *4 (Bankr.D.Colo. Feb.5, 2004) (rejecting five-month gap); *Washington Bancorporation v. Hodges (In re Washington Bancorporation),* 180 B.R. 330, 334 (Bankr.D.C.1995) (rejecting six-month gap); *War Eagle Floats, Inc. v. Travis (In re War Eagle Floats, Inc.),* 104 B.R. 398, 400 (Bankr.E.D.Okla.1989) (rejecting six-month gap)

Even assuming that the Schedules were probative on the question of Debtor's financial state at a time earlier than the petition date, the Defendant maintains that the valuations of the Debtor's assets as set forth in the Schedules are understated in 3 respects:

- first, the value of the Sabinsville parcel was worth more than 3 times the value set forth in Schedule A/B;

- second, the value of the Debtor's ½ interest in the Norristown property is worth than twice the value set forth in Schedule A/B; and

- third, the Debtor received $55,000 from the Defendant's sale of the timber rights to PLC during the 9 months prior to her bankruptcy filing.

Def.'s Mem. at 6.

With respect to the Sabinsville parcel, the record in the main case reflects that the property was sold for $115,000 (after deductions to seller), ½ of which proceeds ($57,500) would go to the Debtor's estate. See Trustee's Motion to Sell, Order approving Sale, and Report of Sale. Case No. 16-12925, Docket ## 269, 279, and 282.

10

That amount is substantially more than the $36,000 valuation set forth in Schedule A/B. Mot., Ex. E;

With regard to the Defendant's claim that the Norristown property is worth more than twice the value stated on the schedules (Resp. 6), the Debtor's claim of exemption of the entire amount of that property excludes it from the insolvency calculation (*see* 11 U.S.C. § 101(32)(A)(ii)).[6]

With respect to the $55,000 which the Defendant contends that he gave to the Debtor from the sale of the timber rights to PLC during the 9 months prior to her bankruptcy filing, that would also have constituted an asset which should have altered the insolvency calculation, yet the Plaintiff does not mention it.

On the liability side of the ledger, Plaintiff relies on the Schedule E/F to arrive at total unsecured debts of $83,800; however, the claims register (attached as Ex. H to the Motion) lists only $34,810 in unsecured claims after subtracting out the claims to which the Debtor filed objections.[7] Yet a comparison of the unsecured claims total listed on Schedule E/F ($83,800) with the total of *undisputed* unsecured claims listed on the claims register ($34,810) reveals a difference of $48,990. The bulk of the difference is comprised of a $45,000 debt owed to the Defendant. *See* Schedule E/F.[8] Moreover,

---

[6] The Defendant maintains that it was worth $500,000 and that after deduction of liens and encumbrances of $91,800 (for mortgage arrears and accrued taxes) the Debtor' ½ ownership interest in the property would be worth $204,000. Def.'s Mem. at 6. That amount is substantially more than the $78,000 valuation set forth in Schedule A/B. See Mot., Ex. E;

[7] Of the total $682,500 in total unsecured claims on the claims register, the Debtor filed objections to four claims which total $647,500. Those four claims were filed by relatives of the Debtor (her ex-husband, two daughters, and one grandson).

[8] The Defendant did not file a Proof of Claim in the main case.

Schedule E/F fails to provide an explanation of the nature of the debt owed to the

Defendant.[9] Thus, the court finds that the Plaintiff's evidence as to Debtor's financial

state on the date of the transfer is either unprobative or self-contradictory. For that

reason, the court finds that the Plaintiff has not carried her initial burden of proof on the

issue of insolvency for purposes of a summary judgment ruling;

VI.     Ruling

Based on the Trustee's failure (1) to show beyond dispute that the record

demonstrates that the Debtor did not receive reasonably equivalent value in exchange

for the timber rights; and (2) to demonstrate that the Debtor was insolvent, left with

unreasonably small capital, or unable to pay her debts when she made the transfer or

as a result of the transfer of the timber rights, the court concludes that the Plaintiff's

Motion for Partial Summary Judgment as to Count II must be denied.

An appropriate Order follows.

**BY THE COURT**

**Dated:** February 13, 2019                    **Jean K. FitzSimon**
**United States Bankruptcy Judge**

---

[9] The Schedule describes the type of the claim as "Other," but fails to specify the nature of the
debt in the line next to that designation.

Copies to:

Plaintiff's Counsel
Robert W. Seitzer, Esquire
KARALIS PC
1900 Spruce Street
Philadelphia, PA 19103

Defendant's Counsel
Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
McCullough Eisenberg LLC
65 West Street Road, Suite A-204
Warminster, PA 18974

Chapter 7 Trustee
Christine C. Shubert
821 Wesley Avenue
Ocean City, NJ 08226